IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHEYENNE ADAMS, JAMES ADAMS, WENDY ADAMS, §§§§§§§§§§§§§§§§§ *Plaintiffs* <br><br> -vs- <br><br> ZACHRY INDUSTRIAL, INC., INTERNATIONAL PAPER COMPANY, UNITED RENTALS, INC., UNITED RENTALS (NORTH AMERICA), INC., MILLER ELECTRIC MANUFACTURING, LLC, ILLINOIS TOOL WORKS INC., <br> *Defendants* | SA-23-CV-01437-XR |

**ORDER**

On this date, the Court considered Defendants Illinois Tool Works Inc. ("Illinois") and Miller Electric Manufacturing, LLC ("Miller") motion to dismiss (ECF No. 39) and Plaintiffs' motion for jurisdictional discovery (ECF No. 45). After careful consideration, Illinois and Miller's motion to dismiss is **GRANTED** (ECF. No. 39) and Plaintiffs' motion for jurisdictional discovery is **DENIED** (ECF No. 45).

**BACKGROUND**

This is a wrongful death case. Zander Adams was fatally electrocuted while working at a containerboard mill in Mansfield, Louisiana on August 15, 2023. ECF No. 33 at 4–5. Plaintiffs, the survivors of Mr. Adams, sued six parties.[1] Two are Zachry Industrial, Inc. ("Zachry") and International Paper Company ("IPC"). Zachry was Mr. Adams' employer at the time of the incident and entered a services contract to perform work at ICP's mill where the incident occurred.

---

[1] Mr. Adams and his survivors are all Louisiana residents. ECF No. 33 at 2. This action was initially filed in state court against Zachry and removed in November 2023 on diversity. ECF No. 1. Plaintiffs then joined the remaining co-Defendants.

*Id.*; ECF No. 55 at 2. The other four are United Rentals ("United Rentals"), United Rentals North America Inc. ("United Rentals NA"), Illinois and Miller (together, the "Product Defendants"), who designed, manufactured, labeled, sold, or otherwise provided the welding products that were allegedly used by Mr. Adams. ECF No. 33 at 4–5.[2] These products are a "Miller Electric Bobcat 250 arc welder, welding cables, TIG rig, TIG torch, TIG wires, ground clamp, and other component parts of these products." *Id.*[3] Plaintiffs assert various negligence against all Defendants, premise liability claims against Zachry and IPC, and various negligence and products liability claims against the Product Defendants. *Id.* at 5–9.

The only Defendant that resides in Texas is Zachry. *See* ECF No. 33 at 2–3. The Complaint alleges the others "conduct[] a substantial amount of business in Texas and [are] registered to do business in Texas." Yet the Complaint is devoid of allegations surrounding any connection to Texas, relating to either the fatal incident in Louisiana or the products themselves. In April 2024, Illinois and Miller moved to dismiss for lack of personal jurisdiction, or in the alternative, for inconvenient forum, improper venue, and failure to state a claim. ECF No. 39. Plaintiffs oppose this and instead seek jurisdictional discovery. ECF No. 41. All other Defendants have answered.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Applicable Law

A district court has personal jurisdiction over a nonresident defendant if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with federal due

---

[2] United Rentals is the company that "rented and maintained" the product that Mr. Adams was using when the incident occurred. ECF No. 45–11 at 5.

[3] Illinois and Miller note that Plaintiffs misidentified the product, which is a "Miller Electric Bobcat 260." ECF No. 39 at 20.

process. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "'Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis.'" *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Due process requires that the defendant have 'minimum contacts' with the forum state (i.e., that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.' *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Id.* (citing *Lewis v. Fresne*, 252F.3d 352, 358 (5th Cir. 2001)). Plaintiffs seek to rely on both but fail to establish either.

**General Jurisdiction**. "A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "A corporation is at home where its place of incorporation and its principal place of business are located." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (citing *Daimler*, 571 U.S. 117, 137 (2014)). "General jurisdiction can also be present when 'exceptional' circumstances allow a corporate defendant's operations to 'be so substantial and of such a nature as to render the corporation at home in' the forum." *Id.* The Fifth Circuit "ha[s] recognized these exceptional circumstances as 'incredibly difficult to establish.'" *Id.* "'[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . . [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or

frequency of contacts are insufficient to support general jurisdiction.'" *Johnston*, 523 F.3d at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

**Specific Jurisdiction.** Specific jurisdiction is "very different." *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 262 (2017). It "may exist 'over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts.'" *Sangha*, 882 F.3d at 101 (citations omitted). It is "'confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction'" and "exists 'when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (citation omitted). It "is a claim-specific inquiry," *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), that "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *see McFadin*, 587 F.3d at 759 ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim" (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 at 274 (5th Cir. 2006)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). "Such activity or occurrence must 'create a substantial connection with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284). The relationship must arise out of contacts that the defendant itself creates with the forum state, not contacts between the plaintiff or third parties and the forum state and not the contacts the defendant makes by interacting with other persons affiliated with the state. *See Walden*, 571 U.S. at 284. There is a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin*, 587 F.3d at 759.

If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Id.* The touchstone of the inquiry is whether the defendant's conduct shows that it "reasonably anticipate[s] being hauled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In the context of products-liability cases, a stream-of-commerce test determines whether there are minimum contacts—purposeful availment—with the forum. *See Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). This test is satisfied if the defendant "delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state." *Id.* While the defendant need not specifically target the forum state, a court can exercise specific personal jurisdiction over a defendant "if the defendant's product made its way into the forum state while still in the stream of commerce" and the defendant possessed "foreseeability or awareness" of this possibility. *Luv N' care, Ltd. v. Insta-Mix*, 438 F.3d 465, 470 (5th Cir. 2006) (quotation omitted). But the contacts "must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (citation omitted).

As the party seeking to invoke the court's power, Plaintiff "bears the burden of establishing jurisdiction, but is required to present only *prima facie* evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 219 (5th Cir. 2012) (quoting *Seiferth v. Helicopteros*

*Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006)). "In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Pervasive Software*, 688 F.3d at 219-20.

### B. Illinois and Miller Are Not Subject to General Jurisdiction in Texas

Illinois and Miller are not subject to general jurisdiction because they are not "at home" in Texas. Neither party is incorporated in Texas nor is their principal place of business in Texas. Illinois is a Delaware Corporation with its principal place of business and headquarters in Illinois, and Miller is a Wisconsin LLC whose sole member is MEHB Holdings Malta, Ltd., a Malta LLC. ECF No. 39 at 1.[4] Plaintiffs do not challenge this. Instead, Plaintiffs assert three grounds for general jurisdiction: (i) that Illinois and Miller are registered to do business in Texas, (ii) that Illinois has litigated in Texas, and (iii) that Illinois has subsidiaries that operate in Texas.[5] ECF No. 45 at 5–9. Plaintiffs provides zero citations in support of these arguments. All are insufficient and wrong as a matter of law.

"[T]he mere act of registering an agent [does] not create [ ] general business presence in Texas." *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992). Texas is not a "consent-by-registration state," in which registration to do business subjects a company to general jurisdiction. *Id.* The Fifth Circuit recently rejected an identical argument to Plaintiffs that such registration, by law, establishes general jurisdiction. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898–99 (5th Cir. 2024) (noting "[n]othing" in *Mallory* "supports that due process requires a state to assume personal jurisdiction over a corporation that has a registered agent").

---

[4] Miller is a wholly owned subsidiary of Illinois. *See* ECF No. 45 at 2 n.1.

[5] Plaintiffs assert these in their motion for jurisdictional discovery (ECF No. 45), which they "incorporated by reference" in their response to the motion to dismiss, ECF No. 42 at 4.

"Rather, "[w]hen a foreign corporation registers to do business in Texas, it 'only potentially subjects itself to jurisdiction' in Texas." *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 418 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see Wenche Siemer*, 966 F.2d at 181, 183 ("being qualified to do business . . . 'is of no special weight' in evaluating general personal jurisdiction" and "a foreign corporation that properly complies with the Texas registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible"). That Illinois and Miller are registered to do business in Texas does not establish general personal jurisdiction.

Second, a company's choice to litigate in Texas is irrelevant to general jurisdiction. Whether a company participates as a defendant, brings its own claims, or removes claims in Texas state and federal courts says nothing about whether it is "at home" in Texas. It would be nonsensical to subject a company to "any and all" claims, *Goodyear*, 564 U.S. at 919, against it in a foreign state because it initiated or faced litigation there. Not to mention that Plaintiffs cite only six cases over twenty years that Illinois has been part of to support this theory.[6] While a company may choose (or, based on its forum contacts, be required) to submit itself to the jurisdiction of Texas state and federal courts in *specific* cases based on *specific* jurisdiction, this does not establish "substantial, continuous and systematic contacts" required to make the corporation "at home" for general jurisdiction. *Johnston*, 523 F.3d at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

Third, operation of a company's subsidiaries in Texas is alone insufficient to establish general jurisdiction. Plaintiffs rely on speculative allegations that Illinois' subsidiaries are "probabl[y]" "registered for service, maintain[] offices, or otherwise operat[e] within the state of

---

[6] Plaintiffs do not apply this theory to Miller.

Texas," ECF No. 45 at 9.[7] For starters, these facts, if true, would not establish that the subsidiaries are "at home" in Texas. Moreover, even if some of Illinois' subsidiaries were at home in Texas, *Daimler* makes clear that a subsidiary "at home" in the forum state does not automatically subject the parent to general jurisdiction. *See Air Tropiques, Sprl. v. N. & W. Co.*, No. H–13-1438, 2014 WL 1323046, at *10 (S.D. Tex. Mar. 31, 2024). The "corporation itself—not its managing agent or subsidiary or affiliate—must be 'at home' in the forum state." *Id.* (citing *Daimler*, 571 U.S. at 138–39); *see Cencetti v. AGCO Corp.*, No. 5:20-CV-01395, 2021 WL 11669525, at *3 (W.D. Tex. Jan. 14, 2021) (plaintiff's argument that defendant's subsidiary's contacts with Texas, including 36 distribution locations, established general jurisdiction was "wrong as a matter of law"). And while "in some circumstances[,] a close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through the local activities of its subsidiaries," *Hargrave v. Fiberboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983), this rests on an alter-ego theory where the parent company and the subsidiary "are in reality the same corporation." *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 332 (5th Cir. 2014). Because Plaintiff does not offer a single fact that demonstrates Illinois has this type of relationship with any of its Texas subsidiaries, there is no general jurisdiction under this theory.

C. **Illinois and Miller Are Not Subject to Specific Jurisdiction in Texas**

Plaintiffs assert two types of claims against Illinois and Miller: various acts of negligence and products liability. Because personal jurisdiction is "claim-specific," *McFadin*, 587 F.3d at 759, the Court analyzes them in turn.

Plaintiffs assert numerous acts of negligence against the Product Defendants. It is unclear what negligence claims are directed to Illinois and Miller, as many of them relate to claims at ICP's

---

[7] Plaintiffs do not apply this theory to Miller.

facility.[8] In any event, because there are no allegations that Illinois or Miller had any contacts with Texas in relation to any negligence claims, there is no specific personal jurisdiction. Nor is there any specific personal jurisdiction over the product liability claims because there are no allegations that Illinois and Miller were aware or foresaw that the products at issue would be "purchased or used by consumers" in Texas. *Ainsworth*, 716 F.3d at 177. Plaintiff does not allege that the products at issue were manufactured in Texas, shipped to Texas, advertised in Texas, sold in Texas, used in Texas, or in any way directed towards Texas. The tragic incident occurred in Louisiana. Merely passing through Texas sometime in the supply chain is insufficient to create jurisdiction under the stream-of-commerce approach because that does not establish an awareness that it would be "purchased or used by consumers" in Texas. *See Goodyear*, 564 U.S. at 926 (the stream-of-commerce test permits jurisdiction when "the product has traveled through an extensive chain of distribution before reaching the ultimate consumer," such that it "causes harm *inside* the forum") (emphasis added). The stream-of-commerce theory permits jurisdiction in that end forum, not every forum the product traveled through. If Plaintiffs theory were correct, there would be specific personal jurisdiction over a manufacturer in any products liability claim in Texas, so long as the product *passed through* Texas at some point. This is far too "attenuated." *Ainsworth*, 716 F.3d at 177. Nor could a party "reasonably anticipate[] being hauled into court" in Texas based on "unilateral activity of another person or third party," which, here, resulted in the product being used in another state.[9]

---

[8] *See* ECF No. 33 at 7–8 (for example, failure to train employees, inspecting equipment, adequate maintenance, maintaining a safe work environment, adequate medical treatment, and safety policies). To the extent negligence claims are asserted against Illinois and Miller, it appears they are for negligent failure to warn. Plaintiffs plead this under a separate claim in the Second Amended Complaint against the Product Defendants alone, ECF No. 39 at 12.

[9] Even if Plaintiffs argued (they did not) that selling a product to a rental company that operates throughout the United States creates an awareness that the product could be used in any state the company operates, the Court is not persuaded that the stream-of-commerce test extends this far.

Plaintiffs rely on the fact that Miller sells its products at thirteen locations within Texas, and that its products are rented in an additional thirteen locations in Texas, including three United Rental locations. *See* ECF No. 45 at 10. Based on this, Plaintiffs hypothesize that "there is distinct possibility" that the product sale or rental, or some part of the contract related to the incident at issue, took place in Texas. *Id.* at 11. This is too speculative. Nor do these allegations tie the sales or rentals to the products at issue here—the welding products. That a company sells some products in a forum state does not imply it sells the "very [products] that [injured] the plaintiffs." *Pace*, 94 F.4th 879 (quoting *Ford Motor* Company, 592 U.S. at 365). Moreover, because "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction," *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986), whether part of the contract related to the incident in Louisiana occurred in Texas does not affect the jurisdictional analysis.

### D. Jurisdictional Discovery Would Not Help

#### 1. Applicable Law

"To support a request for jurisdictional discovery, a plaintiff "must first make 'a preliminary showing of jurisdiction.'" *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). To make the required preliminary showing, "the plaintiff must allege facts that suggest with reasonable particularity the possible existence of requisite contacts." *Tekmart Integrated Mfg. Servs. Ltd. v. Power-Sonic Corp.*, No. EP-23-CV-00081-DCG, 2023 WL 4307158, at *6 (W.D. Tex. June 30, 2023) (citation omitted). The Fifth Circuit has established that a plaintiff is not entitled to jurisdictional discovery if "the record shows that the requested discovery is not likely to produce the facts needed[.]" *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)).

The plaintiff "bear[s] the burden of demonstrating the necessity of discovery." *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (internal citation omitted). Jurisdictional discovery "should be denied where the discovery sought could not have added any significant facts[,]" *Brock v. Espinet*, No. SA-16-CV-685-XR, 2016 WL 6775448, at *4 (W.D. Tex. Nov. 15, 2016) (citations omitted), and where a plaintiff "has not sufficiently demonstrated how discovery here might bolster its jurisdictional arguments." *USIO, Inc. v. Kauder*, 23-CV-840-XR, 2023 WL 8586348, at *6 (W.D. Tex. Dec. 8, 2023).

### 2. There is No Preliminary Showing of Jurisdiction

Plaintiffs have not made a preliminary showing of either general or specific personal jurisdiction. The Court has already concluded that Plaintiffs failed to make a prima facie case for general or specific jurisdiction, and for the reasons already discussed, Plaintiffs failed to make a preliminary showing as well. There are no facts alleged that hint at Illinois and Miller being "at home" in Texas and Plaintiffs' legal theories in support of general jurisdiction are wrong. Nothing would aid Plaintiffs in establishing general jurisdiction. Plaintiffs also merely speculate what contacts *might* establish specific jurisdiction without alleging any facts "that suggest with reasonable particularity" that these contacts exist. *Tekmart Integrated Mfg. Servs. Ltd.*, 2023 WL 4307158, at *6. Permitting Plaintiffs to seek discovery with "hope that it would lead to the discovery of unspecified facts that 'would likely' establish personal jurisdiction," *Pace*, 93 F.4th at 903, would eviscerate the requirement that Plaintiffs first make a "preliminary showing of jurisdiction." *Fielding*, 415 F.3d at 419. This would amount to an impermissible fishing expedition. Even if Miller sold or rented the very products in the twenty-six specific stores in Texas, this still lacks the "strong 'relationship,'" *Ford Motor Co*, 592 U.S. at 365 (citation

omitted), that "connect[s] to the plaintiff's claim[s]," *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021), because the incident occurred in Louisiana.

## CONCLUSION

**IT IS ORDERED** that Defendants Illinois Tool Works Inc. and Miller Electric Manufacturing, LLC's motion to dismiss (ECF No. 39) is **GRANTED** and Plaintiffs' motion for jurisdictional discovery (ECF No. 45) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants Illinois Tool Works Inc. and Miller Electric Manufacturing, LLC are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 15th day of October, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE