IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHEYANNE ADAMS, JAMES ADAMS, and WENDY ADAMS, | § § § | |
| *Plaintiffs*, | § § § | NO. SA-5:23-CV-01437-XR |
| V. | § § | |
| ZACHRY INDUSTRIAL, INC., | § § § | |
| *Defendant*. | § | |

### ZACHRY DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF JONATHAN EISENSTAT, MD PERTAINING TO ZANDER ADAMS'S EMOTIONAL STATE

Defendants Zachry Industrial, Inc. ("ZII") and Zachry Maintenance Services, LLC ("ZMS") (collectively, "Zachry") respectfully move this Court to exclude, pursuant to Federal Rules of Evidence 702 and 403, as well as the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), any testimony of Jonathan Eisenstat, MD ("Eisenstat") pertaining to Zander Adams's state of mind. Because any proffered state of mind opinions from Eisenstat are unreliable, lack adequate foundation, go beyond his area of expertise and will not assist the trier of fact, they should be excluded in their entirety.

### I.     Introduction.

This case arises out of the death of Zander Adams ("Mr. Adams"), a welder employed by ZMS, who was fatally electrocuted on August 15, 2023, while performing welding work at International Paper Company's ("IP") paper mill in Mansfield, Louisiana (the "Incident"). Plaintiffs, Mr. Adams's surviving spouse and parents, have retained Eisenstat, a medical doctor specializing in forensic pathology, to opine on two things: (1) the cause of Mr. Adams's death;

and (2) whether Mr. Adams experienced any conscious pain and suffering.[1] Eisenstat opines that Mr. Adams died from electrocution and that he experienced approximately 10 to 12 seconds of conscious pain and suffering.[2] Eisenstat's report, however, suggests that he intends to go beyond those two opinions and attempt to offer purported "expert" testimony about Mr. Adams's subjective emotional perceptions during the Incident:

> As the electricity contacted his body, Zander would experience significant pain from the burns as well as a sensation of electrical shock emanating from the site of contact. That current would then spread through his body resulting in muscular contractions and paralysis. The path of electricity would affect his heart resulting in a cardiac arrhythmia (abnormal heart rhythm) and/or respiratory muscles resulting in respiratory paralysis. ***Either of these would have caused Zander to experience*** chest pain and ***a sensation of impending doom***.[3]

Any opinions from Eisenstat pertaining to Mr. Adams's supposed emotions during the Incident are unreliable, speculative and extend well beyond the scope of Eisenstat's actual expertise. Eisenstat is a forensic pathologist who is trained to and performs autopsies to determine causes and manners of death; however, he has no education, knowledge, skill, training, experience, or other qualifications to opine on what a decedent may have been thinking during the moments of a fatal event. Any attempted testimony on Mr. Adams's state of mind should be excluded under *Daubert* and the Federal Rules of Evidence.

## II.    Law and Argument.

### A.    Eisenstat's Emotional-State Opinions are Inadmissible Under Rule 702.

Expert evidence can be "both powerful and quite misleading" if not properly and rigorously screened for admissibility under Rule 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Under that rule's familiar rubric, only helpful testimony from a qualified witness

---

[1] *See* December 12, 2025, report of Jonathan Eisenstat, MD, attached hereto as Exhibit "1" at p. 1. *See also* Excerpts of transcript of March 5, 2026, deposition of Eisenstat, attached hereto as Exhibit "2" at p. 7, ln. 10-16.
[2] *See* Exhibit 1 at p. 1; Exhibit 2 at p. 8, ln. 3-5; p. 14, ln. 24 – p. 16, ln. 9.
[3] *See* Exhibit 1 at p. 12 (emphasis added).

based on a reliable and reliably applied methodology should go before the jury. Fed. R. Evid. 702. Accordingly, conclusory and speculative expert opinions are improper. *E.g.*, *Johnston v. Ferrellgas, Inc.*, 96 F.4th 852, 858 (5th Cir. 2024). Sometimes "there is simply too great an analytical gap between the data and the opinion preferred" for an opinion to be admissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (5th Cir. 1997). Inherently speculative opinions about what someone else felt or thought fail under Rule 702 too. *E.g.*, *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Eisenstat's emotional-state opinions do not pass muster under those settled principles.

### 1.    Eisenstat is Not Qualified to Opine on Mr. Adams's State of Mind During Mr. Adams's Electrocution.

To render an opinion in "a particular field or on a given subject[,]" an expert must be "qualified to testify by virtue of his knowledge, skill, experience training, or education." *Wilson v. Woods*, 163 F3d 935, 937 (5th Cir. 1999). Put a little differently, the expert's "study or practical experience" must give them "knowledge or skill or understanding of certain facts"—the ones they intend to testify about—"beyond that of the average man." *Farris v. Interstate Circuit*, 414 F.2d 409, 412 (5th Cir. 1941). Eisenstat is a medical doctor who focuses his medical practice in the field of forensic pathology.[4] In addition to his forensic pathology consulting practice, he serves as a contract/part-time medical examiner for several hospitals and Medical Examiner's Offices in the Atlanta metro area and in New York City and performs private autopsies.[5] Nothing in his background gives him some unique insight into what Zander Adams might have subjectively experienced during the Incident., or qualifies him to provide his own unverifiable beliefs to the jury under the guise of expert testimony.

---

[4] *See* Exhibit 1 at Curriculum Vitae of Jonathan Eisenstat, MD
[5] *See* Exhibit 1 at Curriculum Vitae of Jonathan Eisenstat, MD; Exhibit 2 at p. 49, ln. 7 – p. 50, ln. 4.

### 2. Eisenstat's Opinions on State of Mind are Unreliable and Based on Insufficient Methodology.

Eisenstat's opinions on Mr. Adams's supposed state of mind while being electrocuted fail to satisfy the reliability requirements of Rule 702 and *Daubert* for several additional reasons.

First, Eisenstat's opinions are not "the product of" *any* "principles and methods[,]" let alone reliable ones. *Cf.* Fed. R. Civ. 702(c). The lack of a valid analytical framework dooms opinion testimony under *Daubert*. *See, e.g.*, *Narine v. Landry*, 151 F.4th 666, 698 (5th Cir. 2025) (affirming exclusion of expert who provided "no explanation or methodology" for opinion); *Williams v. BP Exploration & Prod., Inc.*, 143 F.4th 593, 601 (5th Cir. 2025) (same for expert who gave "substantively unreliable" opinion justified by the fact that it was his opinion). Eisenstat identifies no methodology that he applied to conjure opinions about Zander Adams's state of mind during the Incident.[6] Allowing him to give emotional-state opinions based on *nothing* would ignore one the most fundamental tenets of the Court's gatekeeping role: "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The Court should not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 14 (1997).

Within that methodological problem lies another: Eisenstat does not base his emotional-response opinions on adequate facts. Rule 702's command that "sufficient facts or data" undergird opinion testimony, *see* Fed. R. Evid. 702(b), means that "the existence of sufficient facts" is "in all instances [a] mandatory" predicate to admission, *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007); *accord, e.g.*, *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013).

---

[6] *See* Exhibit 2 at p. 19, ln. 18 – p. 21, ln. 18.

"Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Eng'd Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). Eisenstat admits that he is not opining on how Mr. Adams was electrocuted, including entrance and exit wounds for the electrical current path, instead deferring that to other experts.[7] He is unable to testify specifically which organs the electrical current may have struck, other than the heart.[8] He also concedes that it would be speculation as to whether Mr. Adams yelled out or made any noise as he was being electrocuted since there was no eyewitness account or testimony supporting that fact.[9] Importantly, Eisenstat has never met or spoken with Plaintiffs—Mr. Adams's surviving spouse, Cheyanne Adams and Mr. Adams's parents, James Adams and Wendy Adams.[10] There is nothing in his reports or deposition testimony suggesting that he undertook any analysis or evaluation of Mr. Adams's personal life necessary to be able to credibly and reliably opine as to what, if anything, was in Mr. Adams's mind during electrocution. Moreover, as noted above, Eisenstat concedes that it would be speculation as to whether Mr. Adams yelled out or made any noise as he was being electrocuted since there was no eyewitness account or testimony supporting that fact.[11]

### 3. Eisenstat's Opinions on State of Mind Will Not Assist the Trier of Fact.

Eisenstat's opinions on Mr. Adams's supposed state of mind during electrocution improperly invade the province of the jury, are matters within the common knowledge and experience of the jury, and will not assist the trier of fact as required by Rule 702. Helpfulness requires that "the expert's reasoning or methodology . . . be properly applied to the facts in issue." *In re Taxotere Prods. Liability Litig.*, 26 F.4th 256, 268 (5th Cir. 2022). In other words, an expert

---

[7] *See* Exhibit 2 at p. 8, ln. 6-16; p. 10, ln. 10-17; p. 30, ln. 11 – p. 31, ln. 5; p. 31, ln. 19 – p. 32, ln. 3.
[8] *See* Exhibit 2 at p. 10, ln. 23 – p. 11, ln. 10 (". . . I can't tell you specifically which organs it may have struck. . . .")
[9] *See* Exhibit 2 at p. 39, ln. 15 – p. 41, ln. 2.
[10] *See* Exhibit 2 at p. 48, ln. 16-21.
[11] *See* Exhibit 2 at p. 39, ln. 15 – p. 41, ln. 2.

"no better suited than a lay person" to interpret the evidence does not help the jury by doing so. *Castro v. Wal-Mart Real Estate Bus. Tr.*, 645 F. Supp. 3d 638, 645 (W.D. Tex. 2022). Our jury can hear the evidence and testimony at trial regarding Mr. Adams, his background and experiences, including his personal life and relationships with Plaintiffs, and make their own determination of what Mr. Adams's state of mind may have been while he was being electrocuted. Eisenstat is not in any better or more unique position than the jury to opine on such matters.

**B.**     **Eisenstat's State-of-Mind Opinions Should Also be Excluded Under Rule 403.**

Even if the Court finds Eisenstat's opinions regarding Mr. Adams's supposed state of mind marginally relevant, they should be excluded under Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403. Eisenstat's opinions largely serve to tell the jury what result to reach - that Mr. Adams experienced not just physical pain but also a sense of "impending doom" during the 10 to 12 seconds he was allegedly conscious during the electrocution. But Eisenstat has no demonstrable or specific knowledge, education, skill, training, or experience on the state of mind of fatal accident victims; he's done no analysis or evaluation of Mr. Adams, his background and experiences, including his personal life and relationships with Plaintiffs, including meeting or speaking with Plaintiffs, and he admits he has no evidence of anything audible coming from Mr. Adams during the electrocution. Allowing Eisenstat to present broad and unsubstantiated opinions or conclusions about what Mr. Adams must have been thinking would serve only to inflame the jury and prejudice Zachry.

**III.    Conclusion.**

For all the foregoing reasons, Jonathan Eisenstat, MD's expert testimony pertaining to Zander Adams's state of mind during Mr. Adams's electrocution should be excluded in its entirety. Eisenstat is not qualified to opine on Mr. Adams's supposed state of mind during electrocution, and any such opinions are unreliable, speculative and lack adequate foundation. Further, Mr. Adams's purported state of mind during electrocution are matters the jury can assess on its own using the facts and evidence of the case. The Court should grant this motion and exclude Eisenstat from testifying in this matter on Mr. Adams's supposed state of mind during electrocution.

WHEREFORE, Defendants, Zachry Industrial, Inc. and Zachry Maintenance Services, LLC pray that this Court grant their motion and enter an Order excluding from this matter the expert testimony of Jonathan Eisenstat, MD on state of mind, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of April, 2026.

*/s/ Roland M. Vandenweghe, Jr.*
Bradley A. Waters
State Bar No. 24033441
Adams and Reese LLP
LyondellBasell Tower
1221 McKinney, Suite 4400
Houston, TX 77010
(713) 652-5151
Bradley.Waters@arlaw.com

AND

7

Roland M. Vandenweghe, Jr.
Louisiana Bar No. 25283 (admitted *pro hac vice*)
roland.vandenweghe@arlaw.com
William K. Wright IV
Louisiana Bar No. 36736 (admitted *pro hac vice*)
billy.wright@arlaw.com
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Tel: 504.581.3234
Fax: 504.566.0210
*Attorneys for Defendants,*
*Zachry Industrial, Inc. and*
*Zachry Maintenance Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I DO HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record on April 10, 2026 via this Court's CM/ECF system.

*/s/ Roland M. Vandenweghe, Jr.*
Roland M. Vandenweghe, Jr.

8