**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CHEYENNE ADAMS, <br> *Plaintiff* <br> <br> v. <br> <br> ZACHRY INDUSTRIAL, INC., <br> INTERNATIONAL PAPER COMPANY, <br> ZACHRY MAINTENANCE SERVICES, <br> LLC, <br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No.  SA-23-CA-01437-XR |

## ORDER

Before the Court are the Defendants' Motions for Summary Judgment (ECF Nos. 137, 147, 148). After careful consideration, the motions are **GRANTED**.

## BACKGROUND

This is a survival action stemming from the death of Plaintiff's husband, Zander Adams ("Adams"). Louisiana law applies. ECF No. 208.

### I. Mansfield Mill Operations

Defendant International Paper Company (IP) owns a paper manufacturing facility in Mansfield, Louisiana ("the Mansfield Mill"). ECF No. 137-2 at 2. The Mansfield Mill requires maintenance and repair services to ensure that its manufacturing machinery remains in working order. *Id.* IP began contracting with Zachry Industrial, Inc. (ZII), to provide these services in 2008. ECF No. 147 at 2.

From 2008 through 2022, ZII welders regularly performed welding work in the Mansfield Mill. *Id.* at 2–3. ZII implemented a site-specific safety and health policy in 2019 to support these operations. ECF No. 183 at 5.

1

In July 2022, ZII entered its most recent maintenance contract with IP. ECF No. 147 at 2–3. This contract ran through July 2025. *Id.* It covered general maintenance and repair services to the machinery IP uses to manufacture its paper products. *Id.*

## II. Assignment of Mansfield Mill Maintenance Contract

On September 26, 2022, ZII sent a letter to IP stating that it had assigned "all rights and obligations" under the Mansfield maintenance contract to Zachry Maintenance Services, LLC (ZMS). ECF No. 137-5. Effective September 29, 2022, all Zachry employees working at the Mansfield papermill became employees of ZMS. ECF No. 147 at 3. After the reassignment, the on-site Zachry personnel continued to work in the same capacity and report to the same supervisors as before. ECF No. 148-2 at 58.

From ZMS's assumption of ZII's contractual obligations at the mill in 2022 through the date of Adams's death, ZMS welders regularly performed welding work throughout the mill, including in the area where Adams died. ECF No. 148 at 6.  Adams was a welder at the Mansfield Mill in 2023. ECF No. 183 at 3. He was Plaintiff's spouse at the date of his death.

## III. Zander Adams's Death

In July 2023, IP put in an order for ZMS to perform maintenance on a defective chemical line. *See* ECF No. 148-2 at 71 (listing "bottom chemical shower line broke" as reported July 7, 2023). On August 15, 2023, Zander Adams was assigned to perform the welding associated with this job. ECF No. 148 at 7. He was electrocuted while performing this work and died. His death was unwitnessed; a coworker found his body later. ECF No. 147 at 2.

## IV. Procedural History

Plaintiffs filed this wrongful death and survival action in November 2023 in the 57th Judicial District of Bexar County. ZII removed the case to federal court based on diversity.

Plaintiffs assert negligence, gross negligence, intentional tort, and premises liability claims against ZII, ZMS, and IP.

## LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## DISCUSSION

### I. Zachry Industrial, Inc.'s Motion for Summary Judgment

ZII moves for summary judgment. It argues that Plaintiff cannot establish that ZII owed Adams a duty when he died.[1] "Whether a duty is owed is a question of law." *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 2024-00840 (La. 3/21/25), 403 So. 3d 573, 581.

Plaintiff makes two arguments that ZII owed Adams a duty. First, ZII supposedly "retain[ed] a duty related to established systems, protocols, and safety procedures that remained in place after [its] formal exit" from the Mansfield mill. ECF No. 183 at 1. Second, Plaintiff contends

---

[1] ZII also argues that it is entitled to immunity from this tort action because it was the decedent's statutory employer. The Court need not address this argument.

that ZII remained involved in the mill's operations and incurred a duty to the decedent based on that affiliation. *Id.* at 2.

Both arguments are unavailing. The mere fact that ZII authored the site's safety policies does not mean it had a duty to provide Adams with a safe workspace. ZII transferred its obligations at the mill to ZMS before Adams was even hired. At that point, ZII had no say in whether ZMS continued to use the policies that ZII implemented. And Plaintiff cites no Louisiana case in which a safety-policy author was obligated to ensure compliance after the author transferred its obligation for the operations that the policy supported.[2] Besides, Plaintiff's own expert states that the policies were "well written" and any failure was due to implementation. ECF No. 202 at 8.

As to Plaintiff's argument that ZII remained involved in mill operations, any involvement did not rise to a level that created a duty to Plaintiff. ZMS and ZII are distinct legal entities. *Dewberry Group, Inc. v. Dewberry Engineers Inc.*, 604 U.S. 321, 327 (2025) ("[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations."). There is no evidence that a ZII employee supervised Adams or any other ZMS welder, managed the Mansfield mill's safety protocols, was present at the mill at the time of the incident, or authorized Adams to perform the work that led to his death.

ZII lacked any meaningful role in operations at the Mansfield plant when Adams died.[3] Plaintiff accordingly fails to establish that it owed him a duty. ZII's motion for summary judgment (ECF No. 147) is **GRANTED**.

---

[2] A rule that would hold a policy author liable in such circumstances would have a perverse effect. It would discourage the author from drafting a robust safety policy lest a successor adopt it and thereby impose a duty on the author.

[3] To the extent that Plaintiff asserts that ZII intentionally injured Adams, ZII's lack of a meaningful role at the Mansfield plan precludes the possibility that ZII acted with knowledge that Adams would be injured.

**II. International Paper Company's Motion for Summary Judgment**

IP moves for summary judgment. It argues that it qualified as Adams's "statutory employer" under the Louisiana Workers' Compensation Act and is therefore immune from tort liability. Plaintiff argues that IP was not Adams's statutory employer, and even if it was, IP is not immune because it acted intentionally.

**A. Statutory Employers Under the Louisiana Workers' Compensation Act**

"Under the Louisiana Workers' Compensation Act, La. R.S. 23:1061, an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer, or any principal, in tort." *Ramos v. Tulane Univ. of Louisiana*, 2006-0487 (La. App. 4 Cir. 1/31/07), 951 So. 2d 1267, 1269. This applies both to a "direct employer/employee relationship as well as to a statutory employer/employee relationship." *Id.*

A statutory employer/employee relationship may exist between an employee and a principal that is not his direct employer. *See* La. Stat. Ann. § 23:1061 (providing for statutory-employer relationships). The relationship is presumed if a contract between the principal and the employee's direct employer recognizes the statutory-employer relationship. La. Stat. § 23:1061(A)(3). The presumption is overcome only "by demonstrating that the work [that the employee] was performing at the time he sustained his injuries was not an integral part of or essential to [the principal's] ability to generate its goods, products, or services." *Ramos*, 951 So. 2d at 1269.

**B. IP Was Adams's Statutory Employer When He Died**

Here, IP and ZII signed a contract for maintenance services at the Mansfield Mill in 2022. That contract explicitly recognized IP as the statutory employer of ZII's employees. ZII then assigned "all rights and obligations" under the contract to ZMS in September of that year. ECF

No. 137-5 at 1. ZMS "assumed all rights and obligations." *Id.* IP maintains that per this contract and its assignment to ZMS, Adams was IP's statutory employee.

Plaintiff makes two arguments in response. First, she contends that there was not a valid assignment. But the letter that ZII sent to IP in September 2022 clearly stated that the assignment was done "by execution of this assignment letter." *Id*. IP acknowledged the assignment. *Id.* at 2. That ZMS did not also sign the agreement is immaterial; its consent to the assignment is easily inferred from its assumption of the contract's obligations. And such an assignment is permissible under Louisiana law. *See* La. Civ. Code Ann. art. 1984 ("Rights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects.").

Plaintiff's second argument is an attempt to rebut the presumption of a statutory-employer relationship.  She argues that even if there was a valid assignment, the work that Adams was performing when he died was not essential to IP's operations. But Adams was employed to provide maintenance to support the Mansfield Mill's operations. When he died, he was performing those services on a damaged chemical line at the mill. Plaintiff cannot reasonably contend that maintaining the equipment at the mill is not "essential to [the mill's] ability to generate its goods." *See Ramos*, 951 So. 2d at 1269.

Plaintiff claims that Adams's job "was not formalized in any work order or purchase order." ECF No. 170 at 19. The record indicates otherwise. ECF No. 148-2 at 71 (listing the chemical-line repair job on a "maintenance work order"). Besides, the work need not be formalized to be essential to the mill's ability to produce paper. Plaintiff accordingly fails to overcome the presumption of a statutory-employer relationship.

A statutory employer/employee relationship existed between Adams and IP based on IP's contract with ZII. ZII assigned that contract to ZMS.  ZMS then "stood in the shoes of [ZII] due to the assignment of the latter's interest." *Rain CII Carbon, LLC v. Turner Indus. Grp., LLC*, 2019-403 (La. App. 3 Cir. 3/18/20), 297 So. 3d 797, 809, *writ denied,* 2020-00774 (La. 10/20/20), 303 So. 3d 319. IP was therefore Adams's statutory employer at the time of the incident.

### C. It Is Unreasonable to Conclude that IP Intentionally Injured Adams

IP was Adams's statutory employer, so it is entitled to immunity from Plaintiff's tort action unless it intentionally injured Adams.

### 1. Intentional Act Exception

The Louisiana Workers' Compensation Act's "exclusive remedy provision begins with an explicit carve-out 'for intentional acts.'" *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.*, 34 F.4th 431, 441 (5th Cir. 2022). Plaintiff has the burden of showing an intentional act, and the burden is "steep." *Id.*

"[T]he meaning of 'intent' in this context is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct . . . ." *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208, 211. Plaintiff argues only the second definition: that IP *knew* that Adams's maintenance job was *substantially certain* to injure him. "Substantial certainty requires more than a reasonable probability. The injury must be inevitable." *Dark v. Ga.-Pac. Corp.*, 176 F. App'x 569, 571 (5th Cir. 2006). So to survive summary judgment, Plaintiff must raise a question of whether IP knew that Adams's injury was inevitable.

### 2. Plaintiff Fails to Provoke a Fact Issue on IP's Intentionality

Plaintiff contends that IP intentionally injured Adams under Louisiana law. For support, she brings evidence to show that the injury was inevitable given the hazardous conditions at

Adams's job site. *See* ECF No. 170 at 24–27. The problem for Plaintiff is that this alleged conduct does not satisfy the intentionality standard under Louisiana law. As stated, the burden is "steep." *Rolls*, 34 F.4th at 441. Allowing hazardous work conditions, without more, does not meet it. The Louisiana Supreme Court has noted:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as *knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work*, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

*Reeves*, 731 So. 2d at 210 (emphasis added). The evidence here, construed in favor of Plaintiff, shows that  IP allowed the welding area to remain wet and unsafe but nonetheless authorized Adams to weld. *See* ECF No. 170 at 24–27. This describes gross negligence, not intentionality. *See Dark*, 176 F. App'x at 571 (noting that the intentional-act exception "was not designed for acts that were wanton, reckless or grossly negligent."). Louisiana courts have "narrowly construed the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards." *Reeves*, 731 So. 2d at 211 (collecting cases).

Even if Louisiana law was less clear on this point, Plaintiff also falls short in showing that IP *knew* that injury was inevitable. Knowledge is a requirement. *See Reeves*, 731 So. 2d at 211 (defining an intentional act to be one that the actor "*knows* that the result is substantially certain to follow from his conduct" (emphasis added)). Plaintiff points to no evidence suggesting that IP knew that the environment was unsafe. The best that she can do is note that Marquis Young, IP's "permit issuer" at the mill, "was required to visit the job site where Mr. Adams was killed" and thus "certainly had knowledge of these dangerous conditions." ECF No. 170 at 25. But Plaintiff

provides no evidence that Mr. Young in fact visited the job.[4] Even if Young had visited the site, there is no reason to believe that he would have known that the conditions presented a hazard; his job was to check for fire (not electrocution) hazards, and he was neither a welder nor trained to inspect electrical tools. ECF No. 196 at 10 (citing ECF No. 170-8 at 37, 57). Plaintiff has accordingly failed to raise evidence supporting a reasonable inference of IP's knowledge. Without it, IP cannot be judged to have intentionally injured Adams.[5]

IP was Adams's statutory employer. Plaintiff fails to raise a fact issue on whether IP's conduct could constitute an intentional act under Louisiana law. She also fails to create a dispute regarding IP's knowledge of an inevitable injury. LWCA thus provides Plaintiff's exclusive remedy against IP. IP's motion for summary judgment is **GRANTED**.

## III.  Zachry Maintenance Services, LLC's Motion for Summary Judgment

ZMS was Adams's direct employer when he died. ECF No. 148 at 1–2. So Plaintiff cannot sue ZMS in tort unless ZMS acted intentionally. *See* La. Stat. Ann. § 23:1032(A) (exclusive remedy provision); § 23:1032(B) (intentional act exception). ZMS moves for summary judgment arguing that no reasonable juror could conclude that it intended to injure Adams.

Plaintiff fails to raise a fact issue of whether ZMS acted intentionally.

### A. ZMS's Alleged Conduct Does Not Reasonably Suggest Intentionality

Plaintiff provides evidence that Adams's injury was certain to occur given the conditions that then existed at his job site. ECF No. 184 at 5–11. These conditions included exposed wiring,

---

[4] Plaintiff's Response represents that Young "visited the jobsite." ECF No. 170 at 25. But the deposition transcript that Plaintiff cites does not support this proposition. *See* ECF No. 170-10 at 57. This is not the only point where Plaintiff's counsel's zealous advocacy risks confusing the evidence for the Court. *See, e.g.*, ECF No. 184 at 24 (citing to deposition transcripts that do not support the proposition claimed).

[5] Even with such knowledge, Plaintiff fails to provoke a fact question. "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Reeves*, 731 So. 2d at 212.

a lack of insulating barriers, and wetness. *Id.* Plaintiff also points to an inspection into Adams's death by the Occupational Safety and Health Administration (OSHA). *Id.* at 6. OSHA issued a citation for a "serious" violation based on "cables with damaged insulation or exposed bar conductors." In sum, Plaintiff has evidence of an unsafe job site, dangerous machinery, an OSHA violation, a lack of safety equipment (insulating barriers), and ZMS's failure to address these hazards.

This is insufficient to survive summary judgment. "Louisiana court[s] have distilled four situations that almost universally do not form the basis of an intentional tort: failure to provide a safe place to work, poorly designed machinery, failure to follow OSHA safety provisions, failure to provide requested safety equipment, and failure to correct unsafe working conditions." *Rosales v. Bunzzy's Enter. Realty LLC*, No. CIV.A. 06-11149, 2008 WL 754856, at *2 (E.D. La. Mar. 19, 2008); *see also DelaHoussaye v. Morton Int'l Inc.*, 300 F. App'x 257, 258 (5th Cir. 2008) ("[R]eckless or wanton conduct, gross negligence, *disregard of safety regulation or the failure to use safety equipment* by an employer does not constitute intentional wrongdoing." (emphasis added)).

**B. Plaintiff Fails to Raise a Fact Issue on ZMS's Knowledge**

Plaintiff also fails to create a genuine dispute of whether ZMS *knew* that the hazardous conditions existed such that injury was substantially certain.

To support ZMS's knowledge, Plaintiff first cites the OSHA investigation which concluded that Adams's supervisor, Chris Sawyer, visited the worksite, "knew the conditions," and "should have identified" them as unsafe. ECF No. 184 at 6–7. But Plaintiff's own evidence indicates that he did not actually identify them as such. Sawyer filled out a jobsite inspection report. ECF No. 193-3. In it, he notes 17 hazards for the job that Adams died performing. *See id.* at 2–3 (listing known risks and mitigation steps). Nowhere among these are the hazardous conditions that

11

Plaintiff claims caused Adams's death (exposed wiring, wetness, and a lack of insulating barriers). Sawyer did list "shock by electricity" as a hazard on one page, but on the next he stated that it was not. *Id.*; *see also* ECF No. 184 at 12. And as ZMS noted at oral hearing, Adams himself was a trained welder familiar with dangers and fully authorized to stop his work if needed; if Sawyer "should have identified" the conditions as unsafe, Adams would have. *See* ECF No. 148 at 3–6 (describing Adams's extensive welding qualifications).

Plaintiff also points to the statement of ZMS's corporate executive, Phillip Strahan. ECF No. 184 at 9. Strahan stated that ZMS knew, as a general matter, insulating mats were necessary when working on metal grating. ECF No. 184 at 9 (citing ECF No. 184-7 at 8). But just because ZMS knows this generally does not mean that ZMS also knew that Adams lacked mats during his work, nor that this lack would injure him.

Lastly, ZMS points out that this was the first welding accident at the Mansfield Mill in fifteen years of operations. ECF No. 203-1 at 7. While not dispositive, a "distinguishing feature in determining whether the conduct complained of meets the 'substantial certainty' test is whether the event has occurred before or whether the injury has previously manifested itself." *Thomas v. Fina Oil & Chem. Co.*, 2002-0338 (La. App. 1 Cir. 2/14/03), 845 So. 2d 498, 503. Plaintiff cites to a welding incident that occurred *after* Adams's death. *See* ECF No. 184 at 22. This cannot bolster her contention that ZMS knew Adams's death was substantially certain to occur.

In sum, Plaintiff's evidence fails to raise a fact issue on whether ZMS *knew* Adams's injury was substantially certain. Viewed in the most favorable light, she may establish that Sawyer inspected the job site and, for an unexplained reason, authorized Adams's work believing that he may be injured. But "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls

12

within the range of negligent acts that are covered by workers' compensation." *Reeves*, 731 So. 2d at 212; *see also id.* at 211 ("[E]mployers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment.").

Plaintiff fails to raise a genuine dispute that ZMS intended to injure Adams. "[ZMS's] actions may have been negligent or even grossly negligent, but they were not intentional." *Simoneaux v. Excel Grp., LLC*, 2006-1050 (La. 9/1/06), 936 So. 2d 1246, 1248. ZMS is immune from this tort suit. ZMS's motion for summary judgment is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, Defendants' Motions for Summary Judgment (ECF Nos. 137, 147, 148) are **GRANTED**.

There are several pending motions to exclude expert testimony. The Court has not relied on this testimony to reach its conclusions in this Order. The parties' motions to exclude expert testimony (ECF Nos. 138, 140, 150) are **DENIED AS MOOT**.

A final judgment will follow according to Rule 58.

It is so **ORDERED**.

**SIGNED** this June 15, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE